IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| SPRINGFIELD REMANUFACTURING CORP., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 6:21-cv-03146-MDH ) |
| LEADING EDGE POWER SOLUTIONS, LLC and BP-LEP HOLDINGS, LLC, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER

Before the Court is Defendants' Motion to Dismiss or in the Alternative to Transfer Venue. (Doc. 3). For the reasons set forth herein, the Motion is **GRANTED**. It is ordered that the above-captioned case be transferred to the United States District Court for the Southern District of New York.

## BACKGROUND

Springfield Remanufacturing Corporation ("SRC") agreed to manufacture and sell to Leading Edge Power Solutions, LLC ("Leading Edge"), and Leading Edge agreed to purchase certain Products (the "Letter Agreement"). Thereafter, in an Assignment and Assumption Agreement (the "Assignment"), Leading Edge assigned its rights, obligations, liabilities, and interest in certain Purchase Orders and Invoices issued pursuant to the Letter Agreement to BP-LEP Holdings, LLC ("BP-LEP"). SRC alleges that in the Assignment, both Leading Edge and BP-LEP expressly acknowledged that "SRC/Obligor accepted, invoiced and fully performed the 2019 Purchase Orders in accordance with the Letter Agreement." SRC further asserts that Leading Edge represented that "all obligations owed by SRC/Obligor to Leading Edge/Assignor, on or prior to

1

the [Assignment] Effective Date under the Letter Agreement and the 2019 Purchase Orders and 2019 Invoices have been duly and fully performed."

SRC's Complaint contains two counts: (1) a declaratory judgment claim that seeks a declaration of the rights and liabilities of SRC, Leading Edge, and BP-LEP pursuant to the Assignment and the Letter Agreement; and (2) a breach of contract claim against Leading Edge only that seeks recovery of the principal amount of $53,746.00 allegedly owed by Leading Edge under the Letter Agreement, plus interest and other incidental damages.

While there is a dispute as to whether the units were completed and delivered, it is uncontroverted that the units were not functioning according to specifications set forth in the Letter Agreement. On May 6, 2021, Leading Edge wrote to Plaintiff, outlining its concerns with the units and demanding that $2,013,309.00 paid to Plaintiff be put in escrow while certain modifications were added, and a one-hundred-eighty-day period take place to verify that the units meet performance requirements and be free of mechanical issues. If the units did not meet their performance requirements and/or were not free of mechanical failures, Leading Edge demanded that the Defendants be refunded the full amount of $2,013,309.00 paid to Plaintiff. SRC's declaratory judgment claim thus essentially seeks an order that it is not liable for the $2,013,309.00 which Defendants seeks to be refunded if SRC does not meet its obligations under the Letter Agreement.

**STANDARD**

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *NEXTEP, LLC v. Kaba Benzing America, Inc.*, 2007 WL 4218977, *1 (E.D. Mo. 2007). When considering a 12(b)(6) motion, the factual allegations of a complaint are assumed true and are considered in the light most favorable to the plaintiff. *Id.* To

2

avoid dismissal for failure to state a claim, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. This statement requires that the plaintiff give the defendant facts sufficient to give fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Id*. The court may dismiss the complaint when it is clear that no relief can be granted under any set of facts that could be proved consistent with the complaint. *See id*.

## DISCUSSION

In their Motion, Defendants ask the Court to dismiss or transfer the above-captioned case based on a forum selection clause contained in the Letter Agreement. On the other hand, SRC argues that the forum selection clause found in the Assignment is controlling here.

### A. Letter Agreement

This case unquestionably concerns a dispute arising from the Letter Agreement regarding the sale of products by SRC to Defendant Leading Edge. Leading Edge asserts that SRC has not performed under the Letter Agreement, and SRC primarily seeks relief in the form of declaratory judgment whereby the Court, essentially, would find that SRC has performed under the Letter Agreement.

SRC pleads that SRC and Leading Edge entered into the Letter Agreement in which SRC agreed to manufacture and sell to Leading Edge certain products pursuant to terms included in the Letter Agreement. (Complaint, ¶ 12). Having agreed that a prototype unit satisfied Leading Edge's requirement, Leading Edge, pursuant to the Letter Agreement, issued three purchase orders to SRC. *Id*. at ¶ 17. "Pursuant to the Letter Agreement, SRC accepted the Purchase Orders…" *Id.* at ¶ 18. "Pursuant to the Letter Agreement, SRC then manufactured [products] in accordance with the Letter Agreement and Purchase Orders." *Id*. at ¶ 19. "Pursuant to the Letter Agreement, SRC

3

then issued [invoices]." *Id*. at ¶ 20. "To date, Leading Edge has not paid the outstanding principal amount of $53,746.00 and interest due to SRC for the prototype unit described in the Letter Agreement, despite SRC's complete performance of the Letter Agreement." *Id*. at ¶ 26.

SRC also seeks declaratory relief establishing that SRC performed under the Letter Agreement, for which the amount in dispute is the $2,013,309.00 derived from the invoices. "Despite…Leading Edge's failure to perform its obligations under the Letter Agreement…Leading Edge made a demand upon SRC purportedly seeking remedies under the Letter Agreement and applicable law." *Id*. at ¶ 27.

The Letter Agreement provides for jurisdiction and venue in the event of a proceeding arising under the Letter Agreement:

> Leading Edge and SRC each irrevocably and unconditionally submits to the exclusive jurisdiction of and venue in the United States Federal District Court for the Southern District of New York, sitting in Manhattan, New York (or if such court lacks jurisdiction, in the Supreme Court of the State of New York in and for New York County, sitting in Manhattan) for any proceeding arising under this Letter Agreement or any Purchase Order issued pursuant to this Letter Agreement. Leading Edge and SRC each waives, and agrees not to assert in any such dispute, to the fullest extent permitted by applicable law, any claim that: (i) such Party is not personally subject to the jurisdiction of such court; (ii) such Party and Party's property is immune from any legal process issued by such courts; or (iii) any litigation commenced in such court is brought in an inconvenient forum. Each Party hereto consents that all services of process made by certified mail, return receipt requested, directed to it at its address set forth in Section 12(b) below shall be deemed completed when received.

(Doc. 1, Ex. B).

### B. Assignment

SRC, Leading Edge, and BP-LEP later entered into the Assignment, in which Leading Edge assigned its rights, obligations, liabilities, and interest in the purchase orders and invoices to BP-LEP. (Complaint, ¶ 22). SRC served as Obligor. *Id*. "In the Assignment, Leading Edge expressly retained its obligations and liabilities under the Letter Agreement relating to the

4

prototype unit described in the Letter Agreement." *Id*. at ¶ 23. "In the Assignment, Leading Edge affirmatively acknowledge 'SRC/Obligor accepted, invoiced and fully performed the [purchase orders] in accordance with the Letter Agreement.'" *Id*. at ¶ 24. "BP-LEP, as the assignee of Leading Edge's rights, obligations, liabilities, and interest in the Purchase Orders and the Invoices, thereafter made payment to SRC…". *Id*. at ¶ 25.

As a forum selection clause, the Assignment contains the following:

> The Parties each irrevocably and unconditionally submit to the jurisdiction of and venue in the United States Federal District Court for the Western District of Missouri, sitting in Springfield, Missouri (or, if such court lacks jurisdiction, in the Circuit Court of Greene County, Missouri), for any proceeding arising under this Assignment Agreement.

*Id*.

### C. SRC's Complaint arises out of the Letter Agreement

From SRC's pleadings, it is clear this dispute arises out of the Letter Agreement rather than the Assignment. As an initial matter, there is no doubt that SRC's breach of contract claim in Count II arises out of the Letter Agreement, as it has little to do with the Assignment whatsoever. SRC claims that it has been damaged in the amount of $53,746.00 based on Leading Edge's "fail[ure] and refus[al] to pay SRC the outstanding principal and interest due to SRC for the Prototype Unit sold and delivered by SRC in accordance with the Letter Agreement." (Complaint, ¶ 44).

Overall, SRC's rights and obligations are defined by the Letter Agreement, not the Assignment. Considering that SRC's declaratory judgment claim in Count I primarily asks the Court to declare that SRC fully performed under the Letter Agreement, SRC by its own pleadings expressly contends that this dispute arises from the Letter Agreement. In response to the instant Motion to Dismiss, SRC now argues that "SRC's claim in Count I seeks a declaration that Leading Edge has no legal right to seek remedies under the original Letter Agreement with regard to the Purchase Orders and Invoices because Leading Edge, in the Assignment, assigned its rights,

5

obligations, and interest in the Purchase Orders and Invoices to BP-LEP." (Doc. 13, p. 3). SRC effectively contends that the Court should ignore the vast remainder of its pleadings, including those also associated with its declaratory judgment claim.

While it is undeniable that the Court would be required to consider the Assignment in ruling on the claims in this case, the fact that the Assignment would be potential evidence that SRC is absolved from any alleged non-performance under the Letter Agreement does not negate that SRC's Complaint unquestionably arises out the Letter Agreement. Accordingly, the forum selection clause found in the Letter Agreement is controlling in this case if valid.

**D. The Letter Agreement's forum selection clause is valid**

The Letter Agreement specifies that the exclusive venue for claims arising out of the Letter Agreement is the United States Federal District Court for the Southern District of New York and that all disputes arising out of the Letter Agreement are governed by New York law. Federal courts routinely uphold forum selection clauses in contracts. The Eighth Circuit has held that "[f]orum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." *M.B. Restaurants, Inc. v. CKE Restaurants, Inc.*, 183 F.3d 750, 752 (8th Cir. 1999). "Where…the forum selection clause is the fruit of an arm's-length negotiation, the party challenging the clause bears an especially heavy burden of proof to avoid its bargain." *Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 973–74 (8th Cir. 2012). "[I]nconvenience to a party is an insufficient basis to defeat an otherwise enforceable forum selection clause…" *Id. See also Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Of Texas*, 571 U.S. 49, 66 (2013).

SRC lastly argues that Defendants have failed to establish that transfer in this case is proper, including that Defendants have not established that venue is proper in the United States District

Court for the Southern District of New York. (Doc. 13, p. 9). However, it is undisputed that SRC and Leading Edge are sophisticated businesses that have negotiated at "arm's length". SRC has made no allegations of fraud or that the Letter Agreement was one of adhesion. There are no public policy issues present in this case. *See Union Elec. Co.* 787 F.3d 903 (8th Cir. 2015). Therefore, SRC has failed to adequately contest that the forum selection clause in the Letter Agreement should be exempt from the general assumption that forum selection clauses are valid and enforceable. *See M.B. Restaurants, Inc.*, 183 F.3d at 752.

  E.  **Transfer**

Courts routinely transfer cases that have been improperly filed in venues other than those that are mandatory under a form selection clause pursuant to 28 U.S.C. § 1404. *See In re Union Elec. Co.*, 787 F.3d 903; *see also KnowledgeLake, Inc. v. PFU Am. Grp. Mgmt., Inc.*, No. 4:19-CV-02470-SEP, 2020 WL 1188114 (E.D. Mo. Mar. 12, 2020); *see also Green v. Paz*, No. 4:16 CV 1900 CDP, 2020 WL 555052 (E.D. Mo. Feb. 4, 2020). Other than its contention that it should not be subject to the Letter Agreement's forum selection clause, SRC does not set forth any reason why transfer pursuant to § 1404 would not be a proper remedy. Defendants agree that, if the Court elects not to dismiss this case, transfer is the proper remedy. Accordingly, the Court orders that the above-captioned case be transferred to the United States District Court for the Southern District of New York.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or in the Alternative to Transfer Venue (Doc. 4) is **GRANTED**. It is hereby **ORDERED** that the above-captioned case be transferred to the United States District Court for the Southern District of New York.

**IT IS SO ORDERED.**

Dated: August 17, 2021                     */s/ Douglas Harpool*
                                            **DOUGLAS HARPOOL**
                                            **United States District Judge**